The People of the State of New York, Respondent, v Ernest Taylor, Appellant. [835 NYS2d 442]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Collini, J.), rendered July 27, 2004, convicting him of burglary in the second degree and attempted robbery in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

The defendant, after a joint jury trial with the codefendant Johnnie Townsend, was found guilty of burglary and attempted robbery charges. On appeal, he argues, inter alia, that the striking of certain testimony concerning the victim's HIV status deprived him of a fair trial.

The victim testified that she was sleeping when the defendant and codefendant, both of whom were strangers, entered her room, tied her up, placed a pillow over her head, and demanded money. She further asserted that after she initially denied having any money and was threatened, she admitted that she had seven or eight dollars in her wallet, which she saw the defendant remove. At this point, the attack was interrupted by police officers, who were in the building for an unrelated investigation. The officers heard yelling and arguing from the victim's room and went to her door, which was ajar. While standing outside the door, the officers heard the victim crying, calling for help, and saying "stop." When the officers entered, they saw the victim hog-tied with an electrical cord and a shoelace, and the codefendant over her with a pillow in his hands. The defendant was by the door with money in his left hand. When he saw the police, he said, "oh, shit," and ducked behind the door. After a struggle, the defendant was arrested and eight dollar bills were recovered from under a chair behind the door. The officers

testified that the victim appeared very scared, and was crying and asking for help.

The defendant and the codefendant both testified and denied that they had demanded or taken any money from the victim. Rather, they asserted, they were in the victim's building to meet with a person who was helping them find construction work and who introduced them to the victim. The codefendant testified that he and the victim smoked some crack together and were about to engage in consensual bondage-style sexual intercourse when the defendant interrupted and said to the victim, "Yo, didn't you tell my man you HIV positive?" This, the codefendant testified, caused the victim to start "hollering and screaming and crying and everything." The court struck the testimony concerning the victim's HIV status. The codefendant admitted that he was over the victim with a pillow when the police entered, but asserted that he was only attempting to put the pillow under her head to comfort her. The defendant testified that when he entered the victim's room and saw her about to have sex with the codefendant, he asked her if she had informed him "about her situation." The court struck the testimony concerning the victim's "situation." Initially, the court also precluded the defendant from testifying that he had taken courses and was a counselor for substance abuse and sexually transmitted diseases. However, the court then allowed the defendant to testify that he was a drug abuse counselor and had counseled the victim on prior occasions, and that he had made a "statement" to the victim when he went into her room which caused her to become upset and to curse at him, and to tell him that she knew she couldn't trust him, i.e., that he had breached a confidence.

On appeal, the defendant asserts that he was deprived of his constitutional right to present a defense when the court struck the testimony concerning the victim's HIV status. The defendant argues that testimony concerning the exact nature of the confidentiality he breached was necessary to explain the victim's extreme emotional state when the police arrived, and to establish her bias, hostility, and motive to fabricate criminal charges out of what was in fact a consensual sexual encounter. However, the defendant failed to preserve this argument for appellate review with a specific and contemporaneous objection on the record to the striking of the testimony (*see People v Williams*, 193 AD2d 826 [1993]). In any event, reversal is not warranted.

A court's discretion in making evidentiary rulings is circumscribed by the rules of evidence and the defendant's constitutional right to present a defense (*see People v Carroll*, 95 NY2d

375 [2000]; *People v Ocampo*, 28 AD3d 684 [2006]). "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law" (*Washington v Texas*, 388 US 14, 19 [1967]; *see People v Monroe*, 30 AD3d 616 [2006]; *People v Ocampo, supra*). The defense may establish, during both cross examination and on its direct case, the victim's bias, hostility, or motive to lie (*see People v Chin*, 67 NY2d 22 [1986]; *People v Monroe, supra*; *People v Ocampo, supra*; *People v Ellis*, 126 AD2d 663 [1987]). This is not a collateral inquiry, but is directly probative on the issue of credibility (*see People v Chin, supra*; *People v Monroe, supra*; *People v Ocampo, supra*; *People v Ellis, supra*). However, the court, in its discretion, may properly exclude such evidence when it lacks a good faith basis, is based solely on hearsay, or is too remote or speculative (*see People v Monroe, supra*; *People v Ocampo, supra*).

Here, the record does not establish any of these discretionary bases for excluding the testimony at issue. However, CPL 60.43 precludes the admission of evidence of the victim's sexual conduct in a prosecution for any offense unless such evidence is first determined by the court to be relevant and admissible in the interest of justice, after an offer of proof by the proponent of such evidence outside the hearing of the jury. The section was enacted to circumscribe the harassment and embarrassment of victims and their families by use of wide inquiries into irrelevant sexual conduct, and to prevent confusing and prejudicing juries "by creating a side issue concerning matters irrelevant to the primary issue and having no bearing on the guilt or innocence of the defendant" (Mem of Assembly Rules Comm, L 1990, ch 832, 1990 NY Legis Ann, at 402). Here, the defendant did not seek a prior determination as to the relevancy and admissibility of the victim's HIV status. Indeed, the first mention on the record that the defendant counseled the victim or betrayed a confidence concerning her HIV status was the testimony of the codefendant. Neither the counseling nor the betrayal was mentioned during the opening statements, and the victim was not questioned concerning the same during cross-examination. Further, nothing was said when the victim's HIV status was raised during discussions concerning the victim's medical records and the scope of permissible cross-examination

as to her mental health. To the contrary, the court noted, the defense had disavowed any intent to raise the victim's HIV status for any purpose. In any event, to the extent that CPL 60.43 impinged upon the defendant's constitutional right to present a defense (*see Delaware v Van Arsdall*, 475 US 673 [1986]; *Washington v Texas, supra; People v Carroll, supra; People v Ocampo, supra*; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 60.43), any error was harmless.

Constitutional error does not require reversal if the error's impact was harmless beyond a reasonable doubt (*see People v Hardy*, 4 NY3d 192 [2005]; *People v Simmons*, 75 NY2d 738 [1989]; *People v Crimmins*, 36 NY2d 230 [1975]). Ultimately, regardless of how overwhelming the quantum and nature of other proof, a constitutional error is harmless beyond a reasonable doubt only if there is no reasonable possibility that it might have contributed to the conviction (*see People v Hardy, supra* at 198; *People v Simmons, supra* at 739; *People v Crimmins, supra* at 240-241). This determination is to be made upon a review of the entire record (*see People v Hardy, supra*).

Here, the defendant was not precluded from presenting his defense to the jury that the victim's highly emotional state when the police entered was the product of her anger and outrage at the defendant's betrayal of a confidence he learned during counseling, and motivated her to fabricate allegations which resulted in criminal charges. Rather, he was only precluded from presenting direct evidence as to the exact nature of the confidence. (The various references to the victim's HIV status before the jury were all stricken, and the jury is presumed to have followed the judge's direction to disregard the same.) However, this is not a case where the sole witnesses to the events were the victim, the defendant, and the codefendant, nor was the jury required to make credibility determinations based solely on their competing versions of the events (*see e.g. People v Ocampo, supra*). Rather, the police, prior to revealing themselves, heard and saw things that corroborated the victim's version of the events and contradicted the defendant's version. Further, at trial, the People played a voicemail message that the codefendant left with the District Attorney after his arrest wherein he asserted that drugs were to blame for the incident. The People also presented evidence of a statement made by the defendant to the police wherein he asserted that he and the codefendant had gone to the victim's building because she had some money for them, and that she was already bound when they arrived. Given this record, we find no reasonable possibil-

ity that the striking of testimony concerning the victim's HIV status contributed to the conviction.

The prosecutor's comments during summation were not so prejudicial as to constitute reversible error (*see People v Williams*, 2 AD3d 546 [2003]).

The defendant's remaining contentions, including those raised in his supplemental pro se brief, are without merit. Ritter, J.P., Santucci, Balkin and McCarthy, JJ., concur.